**Bruce S. SCHAEFFER, Plaintiff,**

**v.**

**Anthony CAVALLERO, Robert Bautz, Trans States Airlines, Inc., and Trans World Airlines, Inc., Defendants.**

**No. 98 Civ. 3690(JSR).**

United States District Court, S.D. New York.

June 29, 1999.

Erik Lillquist, John Siffert, Lankler, Siffert & Wohl, New York City, for plaintiff.

Jeffrey Ellis, Quirk & Bakalor, New York City, for defendant.

*OPINION*

RAKOFF, District Judge.

A legal education is a wonderful thing. When the flight attendant on Trans States

Airlines Flight 7669 departing New York for Richmond told Bruce Schaeffer, an attorney specializing in corporate franchise matters, that he was not permitted to bring two pieces of luggage on board, he vigorously protested, asserting his alleged knowledge of airline regulations and procedures. When, having reluctantly relinquished one of the bags, he failed to receive a promised baggage receipt, he so vociferously pursued his demand for the receipt that he was finally asked to leave the flight. Given the option to leave voluntarily, he refused until escorted out by the police. He then returned home and immediately set about drafting, *pro se*, the original Complaint in this case, alleging breach of contract, battery, false imprisonment, defamation, and tortious interference with prospective economic advantage, and demanding punitive and other damages in excess of $25 million.

Ultimately, however, following discovery, motion practice, trial preparation, and completion of plaintiff's case at trial, plaintiff settled the case for $396: the price of his ticket.

After the case settled, counsel for the defendants, with plaintiff's consent, asked the Court to elaborate in writing two bench rulings—one favorable to plaintiff, one favorable to defendants—that the Court had made at the conclusion of plaintiff's case, *see* trial transcript ("tr.") at 133, 173, 190, and that counsel believed might be of some precedential value. The Court hereby complies with that request.

■ The Federal Aviation Act provides that an airline "may refuse to transport a passenger or property the carrier decides is or might be inimical to safety." 49 U.S.C. § 44902. Such a refusal cannot give rise to a claim for damages under either federal or New York State law unless the carrier's decision was arbitrary and capricious. *See Schaeffer v. Cavallero*, 29 F.Supp.2d 184, 186 (S.D.N.Y.1998), *citing Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2d Cir.1975) and *Adamsons v. American Airlines*, 58 N.Y.2d 42, 48,

457 N.Y.S.2d 771, 444 N.E.2d 21 (Ct.App. 1982). In denying defendants' prior motion for summary judgment, this Court found that a reasonable juror could conclude from the submissions there made that the defendants removed Schaeffer from the plane, not because they believed he posed a safety risk, but in retaliation for his verbal protests, and that this would be arbitrary and capricious. *See Schaeffer*, 29 F.Supp.2d at 186.

Nonetheless, plaintiff, in presenting his direct case at trial, elicited no evidence of retaliatory motive on the part of the defendants. He did, however, introduce evidence that, if construed most favorably to plaintiff, would tend to show that defendants reached their decision that plaintiff presented a safety risk that required his removal from the plane based chiefly on their observation of his strenuous arguments for a baggage receipt, in the course of which he raised his voice, denounced the airline's position as "preposterous," and was generally quarrelsome. Thus, when defendants moved at the close of plaintiff's case for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a), the question before the Court was whether a reasonable juror could find that defendants acted in an arbitrary and capricious manner in removing plaintiff on the grounds of safety risk when all he had done was loudly protest a non-safety matter, *i.e.*, their refusal to give him a baggage receipt.

■ In the first of the two holdings on which counsel has asked the Court to elaborate, the Court held that a jury could so find, and therefore denied defendants' Rule 50(a) motion. Tr. at 177. Any other conclusion would have rendered completely futile and without meaning the statutory requirement that a carrier may remove a passenger from an airplane only upon a finding that transporting him "is or might be inimical to safety." Recognizing the need to give carriers a broad discretion in making such a finding, the courts, as noted, have held that it may not be the sub-

352

ject of a claim for damages unless it is found to be arbitrary and capricious. But to say (as defendants essentially argue) that any time an impolite or unpleasant passenger debates a non-safety issue with an airline employee in a boisterous or abusive manner he automatically poses a potential threat to safety would be in effect to set no meaningful limits to the carrier's exercise of its discretion and thus to eliminate the statutory standard altogether. Where no safety issue is reasonably implicated, even grouches have a right to gripe without being grounded.

On the other hand, the remedies available to vindicate that right may in many cases be limited. Here, the Court, on defendants' Rule 50(a) motion, dismissed all of plaintiff's then-remaining claims except for breach of contract. One such ruling (the second ruling that the parties here request be elaborated) dismissed plaintiff's claims of battery and false imprisonment that were premised on the police's escorting plaintiff from the airplane at the defendants' behest and, in so doing, touching plaintiff's elbow.

■ Plaintiff suffered these alleged torts only after an airline employee not otherwise involved in the incident politely told him that he "was going to have to leave the airplane or we are going to have to call the police," tr. at 62, to which plaintiff responded, "You are going to have to call the police," *id.* However, once instructed by an authorized airline representative to leave the plane, the plaintiff had a duty to obey. *See Williams* 509 F.2d at 945; 49 U.S.C. § 44902; *see generally* 14 C.F.R. § 91.11. By, instead, choosing not to disembark on his own and, rather, demanding that he be escorted off by the police, the plaintiff brought upon himself the "battery" and "false imprisonment" he seeks to attribute to the defendants.

■ This is not a case of multiple causation and comparative fault, for, even assuming, *arguendo,* that the carrier's decision to ask plaintiff to leave was wrongful,

there was nothing to prevent plaintiff, once apprised that he would be forced to leave, from leaving on his own. Instead, his obstinate determination to require the police to effectuate the removal was the sole proximate cause of the police-related torts of which he complains. By opting for the method of disembarkation that could result in additional injuries, plaintiff not only assumed and consented to that risk, *see, e.g., Marcano v. Northwestern Chrysler–Plymouth,* 550 F.Supp. 595, 602 (N.D.Ill.1982); Restatement (Second) of Tort § 13, but also effectively released defendants from liability "for any damages which could have been eliminated by reasonable conduct on the part of the plaintiff," *Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164, 167 (1974).

Accordingly, for the foregoing reasons, the Court reconfirms its prior rulings in this case.