**Kamau CUSH and Dorothy Cush, Plaintiffs,**

**v.**

**BWIA INTERNATIONAL AIRWAYS LTD., Defendant.**

**No. 00–CV–1239 (NGG).**

United States District Court, E.D. New York.

Dec. 11, 2001.

Peter D. Baron, Baron & Pagliughi, Mineola, NY, for plaintiffs.

Stephen J. Fearon, Condon & Forsyth LLP, New York City, for defendant.

## MEMORANDUM AND ORDER

GARAUFIS, District Judge.

Plaintiff Kamau Cush ("Plaintiff" or "Cush") brings this personal injury action pursuant to Article 17 of the Warsaw Convention, based on injuries he sustained when he resisted Guyanese immigration officials' attempt to remove him from an international flight. Plaintiff Dorothy Cush claims that these injuries have deprived her of "the services, society, support, companionship and consortium" of her husband. (Pl.'s Compl. ¶ 25.)

Defendant BWIA International Airways, Ltd. ("Defendant" or "BWIA") moves for summary judgment, claiming that the incident which caused Plaintiff's injuries did not constitute an "accident," as defined by Article 17 of the Warsaw Convention, and that therefore Article 17 does not afford Plaintiff relief. Alternatively, Defendant contends that the act of state doctrine precludes Plaintiff's claims because the Guyanese immigration officials were acting on behalf of the sovereign state of Guyana.

For the reasons set forth below, Plaintiff's refusal to disembark an international flight did not constitute an "accident," as defined by Article 17 of the Warsaw Convention, and therefore Defendant's motion is granted.

## I. Factual Background and Procedural History

When considering a motion for summary judgment, this court does not engage in fact finding or weighing of credibility. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Carlton v. Mystic Transportation Inc.,* 202 F.3d 129, 133 (2d Cir.2000). All reasonable inferences are drawn in favor of the nonmoving party. *See id.* Construed in the light most favorable to Plaintiff, the facts are as follows:

In 1999, Plaintiff purchased a roundtrip airline ticket to travel from John F. Kennedy Airport in New York to Guyana on BWIA, with a departure date of October 25, 1999, and a return date of November 25, 1999. (Pl.'s Mem. in Opposition to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") at 3.) Plaintiff, a freelance writer who is a citizen of both the United States and Guyana, traveled to Guyana in order to conduct research on human rights abuses in the country. (*Id.*) In Guyana, Plaintiff is a controversial public figure, due to his publicizing of alleged human rights violations. (*Id.* at 2.) At a protest in July 1999, Plaintiff allegedly urged the crowd to kill the Guyana Housing and Water Minister, Shaik Baksh. (Def.'s Rule 56.1 Statement, Ex. D.)

During his stay in Guyana, various individuals informed Plaintiff that a police squad known as the "black clothes police" was "out to get him." (*Id.* at 3.) The "black clothes police," according to Plaintiff, "were known in Guyana for secretly

murdering political opponents to the government." (*Id.*) Accordingly, Plaintiff cut his trip short and decided to depart Guyana on November 15, rather than November 25. (*Id.*)

On November 15, 2001, Plaintiff arrived at the airport in Guyana, checked in, and received his boarding pass. (*Id.*) Immigration officials then cleared him for departure and after presenting his passport and appropriate documentation to BWIA security personnel, he proceeded to the BWIA departure lounge, where he waited to board the plane. (*Id.* at 3–4.)

BWIA Customer Service Supervisor Sharmin Wills stated in her deposition that prior to boarding, Guyanese immigration officials notified her that the airport's immigration desk should not have cleared Plaintiff for departure and that Plaintiff would not be permitted to board the plane. (Def.'s Rule 56.1 Statement, Ex. F, p. 30, lines 2–25, p. 31, lines 2–6.) Ms. Wills subsequently announced the boarding of the plane. (Def.'s Mem. in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 3.) Plaintiff presented his boarding pass to the BWIA representative at the gate, walked out onto the tarmac, and boarded the plane. (Pl.'s Mem. at 4.)

After Plaintiff took his seat, five or six immigration officials surrounded him and informed him that he was not permitted to leave the country. (Pl.'s Mem. at 4.) These officials did not identify themselves and were not wearing uniforms or badges. (*Id.*) Plaintiff explains that because he had been told that the "black clothes police" were after him and because he did not know that these men were immigration officials, he refused to get off the plane. (*Id.*) After Plaintiff refused to leave voluntarily, the unidentified immigration officials handcuffed him and removed him forcibly. (*Id.;* Def.'s Mem. at 3.) Plaintiff states that BWIA security personnel were also on board the plane, but did not touch him. (Pl.'s Mem. at 4.) He made eye contact with these BWIA representatives, appealing to them to intervene, but they did not. (Def.'s Rule 56.1 Statement, Ex. C, p. 27, lines 18–23.)

The immigration officials, before handcuffing Plaintiff, lifted him out of his seat and threw him onto another seat. (Pl.'s Mem. at 4.) They repeatedly punched him in the face and groin, placed him in a choke hold, handcuffed him, and then pushed him down the stairs leading to the tarmac. (*Id.*) Plaintiff states that "he slid down the stairs on his back and rolled half way down the stairs to the tarmac below." (*Id.*) As a result of these actions, Plaintiff sustained physical injuries. (Def.'s Rule 56.1 Statement, Ex. C, p. 31, lines 12–18.)

Guyanese immigration officials subsequently placed Plaintiff in a jail cell at the airport. (*Id.* at 5.) Later that day, Plaintiff was released and instructed not to leave the country. (*Id.*) Upon his release, Plaintiff was told explicitly for the first time that Guyanese immigration officials were responsible for removing him from the plane and detaining him. (*Id.*)

On November 22, 1999, Plaintiff appeared in Guyanese court and obtained an order permitting him to leave Guyana. (Def.'s Rule 56.1 Statement, Ex. G.) On November 25, 1999, Plaintiff returned to New York. (*Id.,* Ex. C, p. 55, lines 17–19.) On March 1, 2000, Plaintiff filed this complaint. (Pl.'s Compl.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment must be entered when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In determining whether a genuine issue of material fact exists,

"the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.2000).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir.1999) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995)). The burden then shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). The nonmovant must do more than show "some metaphysical doubt as to the material facts," *id.*, and cannot rely solely on the pleadings, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), but must produce "significant probative evidence tending to support the complaint," *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Conclusory allegations, conjecture, and speculation are "insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998).

## B. The Warsaw Convention Governs Plaintiff's Claims

■ The Warsaw Convention exclusively governs the rights of those injured on an international flight. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999).

The Warsaw Convention applies to "all international transportation of persons ... performed by aircraft for hire." Warsaw Convention, Article 1(1). Article 1(2) of the Warsaw Convention defines "international transportation" as:

> any transportation in which, according to the contract made by the parties, the place of departure and the place of destination ... are situated ... within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention.

*Id.*, Article 1(2). Here, Plaintiff's places of departure and destination, New York, were "within the territory of a single High Contracting Party," the United States, and Guyana was "an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate, or authority of another power." *Id.* Therefore, the Warsaw Convention governs the rights and liabilities of the parties to the instant action.

Specifically, personal injury claims that arise from an incident that took place on board an international flight are governed by Article 17 of the Warsaw Convention, which provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

*Id.*, Article 17.

■ The Warsaw Convention is the only means by which an individual injured on

board an international flight may obtain relief. *See* Warsaw Convention, Article 24(1). If recovery is "not allowed under the Convention, it is not available at all." *See Tseng*, 525 U.S. at 161, 119 S.Ct. 662.

### C. The Incident On Board the BWIA Flight Was Not an "Accident"

■ In order to recover under Article 17 of the Warsaw Convention, a party must establish that an "accident" caused the injuries that form the basis of her claim. *See Air France v. Saks*, 470 U.S. 392, 396, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). For purposes of Article 17, an accident occurs "only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger. This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries" *Id.* at 405, 105 S.Ct. 1338. In *Saks*, the Supreme Court recognized that "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." *Id.* at 406, 105 S.Ct. 1338. This link, however, must be attributable to the cause of the incident, not merely to the occurrence itself. *Id.* at 399, 105 S.Ct. 1338. Thus, courts apply proximate cause analysis in determining whether an unusual event is a "link in the chain" that led to an "accident" for purposes of the Warsaw Convention. *See Margrave v. British Airways*, 643 F.Supp. 510, 512 (S.D.N.Y.1986) (citing, *e.g., DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1196 (3d Cir.1978)). Proximate cause analysis requires that a plaintiff demonstrate an uninterrupted connection between the unusual event and the ultimate injury. *Cf. Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).

Judge Rakoff of the Southern District of New York applied proximate cause analysis in *Schaeffer v. Cavallero*, 54 F.Supp.2d 350, 352 (S.D.N.Y.1999), where he held that a domestic passenger who was forcibly removed from a plane could not sustain claims for battery and false imprisonment because his refusal to disembark voluntarily was the proximate cause of the torts.[1] There, the plaintiff had so vociferously demanded a baggage receipt that he was asked to leave the plane. *See id.* at 351. When he refused to leave voluntarily, the police removed him. *See id.* The plaintiff sued for injuries that he claimed he incurred as a result of the removal, contending that the airline's decision to remove him caused his injuries. *See .id.* The court denied him relief because "his obstinate determination to require the police to effectuate the removal was the sole proximate cause of the police-related torts of which he complains." *Id.* at 352.

■ In the instant case, Plaintiff implies that his initial boarding led him to believe that he had a right to travel, which led him to refuse to disembark and ultimately resulted in his sustaining injuries. (Pl.'s Mem. at 7–8.) Because of the unusual nature of the immigration officials' revocation of Plaintiff's clearance to board the plane, and because the decision was a "link in the chain" that led to his injuries, Plaintiff argues that his injuries were the product of an "accident." (*Id.*) Plaintiff's argument, however, is unavailing.

It was not the unusual circumstances of Plaintiff's boarding that caused the alter-

---

**1.** Because *Schaeffer* concerned a domestic flight, the plaintiff's claims were not brought pursuant to Article 17 of the Warsaw Convention. The causation analysis, however, which identified the disruptive passenger's refusal to disembark as the proximate cause of his injuries, is identical to that employed in Article 17 cases. *See Schaeffer*, 54 F.Supp.2d at 352.

cation, but rather his refusal to leave the plane after he had been informed that he was not permitted to travel. While this court accepts that Plaintiff was never made expressly aware that the individuals who sought to remove him were immigration officials, the court finds, on the undisputed facts in the record, that Plaintiff was aware, or should have been aware, that the airline had approved his removal. In his deposition, Plaintiff stated that four or five BWIA personnel were on board the plane. (Def.'s Rule 56.1 Statement, Ex. "C," p. 26, lines 15–16.) He indicated to them that he did not intend to leave and that he wanted them to intervene. (*Id.*, p. 27, lines 18–23.) The airline personnel made eye contact with Plaintiff but did not respond. (*Id.*, p. 26, lines 13–22.) This compliance affirmatively indicated the airline representatives' approval. Once aware that his removal was effected with official sanction, Plaintiff was obligated to depart the plane. Had Plaintiff complied with his obligation to disembark, he would not have been forcibly removed. In other words, when a passenger is forcibly removed after refusing to disembark at the request of airline officials, or at the request of those authorized and accompanied by airline officials, his refusal to disembark, not the decision to remove him, is the proximate cause of his injuries.

Plaintiff is correct that most passengers on international flights are not injured while being forcibly removed from their seats after immigration authorities have permitted them to board. The Supreme Court, however, has explicitly stated that "it is the *cause* of the injury that must satisfy the definition [of "accident"] rather than the occurrence of the injury alone." *Saks*, 470 U.S. at 399, 105 S.Ct. 1338. Because Plaintiff's refusal to disembark, rather than his initial boarding, was the proximate cause of his removal, and any injuries he suffered therefrom, Plaintiff may not recover under the Warsaw Convention.

Moreover, the Supreme Court has stated that any determination of whether or not an "accident" has occurred must entail an "assessment of all the circumstances surrounding a passenger's injuries." *Id.* at 405, 105 S.Ct. 1338. Here, a passenger who caused a disturbance because he refused to disembark at the request of immigration officials is seeking relief based on the premise that the altercation that he himself instigated was an "unusual" occurrence. Were relief available to a disruptive passenger based on the proposition that his forcible removal was "unusual" or "unexpected," courts would reward disruptive passengers for their disruptions. This court declines to provide international travelers with an incentive to defy immigration authorities.

Other courts that have adjudicated disruptive passengers' personal injury claims have similarly denied relief. In *Grimes v. Northwest Airlines, Inc.*, No. 98–4794, 1999 WL 562244 (E.D.Pa. July 30, 1999), a passenger on an international flight was ordered to leave the plane after arguing with another passenger who had been assigned the same seat. The plaintiff refused to leave. *See id.* at *1. Airport police proceeded to arrest him for disorderly conduct and removed him from the plane. *See id.* He sued the airline pursuant to Article 17 of the Warsaw Convention for injuries that he sustained in the course of his removal. *See id.* The court determined that no "accident" had occurred because "[w]hatever injuries [the plaintiff] suffered occurred because he was arrested, and he was arrested only because he refused to leave the plane voluntarily." *Id.* at *3. The court explained: "It does not matter if it was the captain's decision that initiated the chain of events leading to his arrest; the fact remains it

was entirely within Grimes' control whether he was arrested." *Id.*

A California district court denied relief under Article 17 of the Warsaw Convention in *Brandt v. American Airlines,* No. 98–2089, 2000 WL 288393 (N.D.Cal. March 13, 2000), determining that an altercation between the plaintiff and airline officials was not an "unusual" event for purposes of Article 17 of the Warsaw Convention. In that case, the plaintiff was standing in the aisle of the plane when a flight attendant, attending to a medical emergency, pushed him back into his seat. *See id.* at *2. An argument with the flight attendant and the pilot ensued and the pilot threatened to have the plaintiff arrested for disobeying a flight attendant if he did not leave immediately. *See id.* The plaintiff disembarked voluntarily, but later filed a lawsuit which included personal injury claims under Article 17 of the Warsaw Convention. *See id.* The court held that neither the flight attendant's touching the plaintiff, nor the pilot's threat were "unusual" events that would constitute an "accident" under Article 17 of the Warsaw Convention. *See id.* at **7–8.

Plaintiff attempts to distinguish both *Grimes* and *Brandt* by emphasizing that a revocation of immigration clearance, unlike a seating dispute or casual contact with a flight attendant, is an "unexpected" or "unusual" event and therefore the injuries that resulted from the revocation were caused by an "accident." (Pl.'s Mem. at 12.) Even if Plaintiff is correct, however, that a revocation of a passenger's immigration clearance is an "unusual" or "unexpected" occurrence, his refusal to comply with an official order "interrupt[ed] the [Defendant's] causal connection to the alleged injuries." *Grimes,* 1999 WL 562244 at *3. Therefore, even if the decisions of the immigration officials and the airline representatives created "unusual" or "un-

expected" circumstances, Plaintiff's injuries were not caused by those circumstances and thus were not caused by an "accident" for purposes of Article 17 of the Warsaw Convention.

### III. Conclusion

Plaintiff has failed to demonstrate the existence of any genuine issue of material fact with regard to whether his injuries were caused by an "accident" for purposes of Article 17 of the Warsaw Convention. Defendant's motion for summary judgment is therefore GRANTED. Because Plaintiff Kamau Cush is not entitled to relief under the Warsaw Convention, neither is Plaintiff Dorothy Cush, who seeks to recover based on the same injuries. Because Plaintiff has not demonstrated that his injuries were caused by an "accident," and therefore may not recover under Article 17 of the Warsaw Convention, this court need not address whether the act of state doctrine precludes Plaintiffs' claims.

SO ORDERED.