**Muhammad AL–QUDHAI'EEN, et al., Plaintiffs,**

v.

**AMERICA WEST AIRLINES, INC., et al., Defendants.**

No. C–2–00–1380.

United States District Court,
S.D. Ohio,
Eastern Division.

April 30, 2003.

---

Craig Douglas Andrew, Andrew Law Offices LLC—2, Columbus, OH, Dale A. Danneman, John Charles Hinderaker, Lewis & Roca, Phoenix, AZ, for defendant.

Paul Joseph Gattone, Southern Arizona People's Law Center, Tucson, AZ, for plaintiffs.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

Plaintiffs, Muhammad Al–Qudhai'een and Hamdan Al–Shalawi, assert federal claims for violation of their civil rights pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), and 49 U.S.C.A. § 40127. Plaintiffs also assert state law claims of false arrest/imprisonment, defamation and

privacy invasion (portrayal in false light), intentional infliction of emotional distress, negligence, breach of contract and trespass to chattels.[1] Defendants, America West Airlines, Inc., and America West employees Captain Robert Patterson, First Officer Ron Moore, Robert De Campo, Carol Asada, and Leslie Franklin, move for summary judgment. (Doc. 95). For the reasons that follow, the Court **GRANTS** defendants' motion for summary judgment.

## I. FACTS

Plaintiffs are Saudi Arabian citizens residing in Arizona with their wives and children on F–1 student visas. Plaintiffs are studying to receive doctoral degrees. Defendant, America West Airlines, Inc. ("America West"), is a Delaware corporation doing business in the United States as a common carrier, providing passenger air travel services to the public. Defendants, Robert Patterson, Ron Moore, Robert De Campo, Carol Asada, and Leslie Franklin, are the America West employees who served as pilots and flight attendants on Flight 90.

Plaintiffs planned to attend a series of events and lectures at the Saudi Cultural Attaché in Washington, D.C. on November 19, 1999, however, plaintiffs did not make reservations for the flight until after 9:00 p.m. on November 18, 1999. On November 19, 1999, plaintiffs were issued boarding passes and boarded America West Flight 90 from Phoenix, Arizona to Washington, D.C. with a layover in Columbus,

Ohio.[2] Prior to departure, plaintiff Al–Qudhai'een asked flight attendant DeCampo if he could get plaintiff Al–Shalawi to sit in the empty seat next to him. Plaintiff was instructed that he would have to wait until the plane was airborne. Ignoring DeCampo's instruction, Al–Qudhai'een decided to get up from his seat and tell Al–Shalawi to come sit next to him. Plaintiff Al–Shalawi then remained in his seat for the duration of the flight and did not do anything that defendants considered suspicious.

The only other time plaintiff Al–Qudhai'een got up during the flight was to use the bathroom. Plaintiff decided to go to the first class bathroom because people were waiting to use the bathroom at the rear of the airplane. Flight attendant Asada observed Al–Quadhai'een walk straight to the cockpit door and pull on the handle. Plaintiff now denies that he ever touched the cockpit door. Plaintiff claims that before he even reached the first class bathroom, he was told by flight attendant Asada that the first class lavatory was reserved for first class passengers only and he would have to use the bathroom at the rear of the plane. Plaintiff used the bathroom at the rear of the airplane and then returned to his seat and remained there for the remainder of the flight.

Although plaintiff now denies that he touched the cockpit door or even got close to the first class bathroom, plaintiff did state to the FBI later that day that he may have inadvertently touched the door

---

1. Plaintiffs' claims for breach of duty as a common carrier and violation of Arizona Public Accommodations Law were dismissed in the Court's Opinion and Order dated March 23, 2001. (Doc. 30). Plaintiffs also voluntarily dismissed Count V of their complaint for violation of the Civil Rights Act of 1964.

2. Plaintiffs claim that the America West reservation agent told Mr. Al–Qudhai'een when he made the reservation that Flight 90 was non-

stop. Mr. Al–Qudhai'een was first told that the flight was stopping in Columbus, Ohio by Mr. Al–Shalawi. Mr. Al–Quadhai'een apparently needed further confirmation of the flight itinerary and asked flight attendant Asada if there would be a stop. When she responded yes, plaintiff became irritated and tense, claiming he was not told that there would be a stop.

to the flight deck due to its close proximity to the handle of the forward lavatory. Additionally, a first class passenger, Renato Fernandez, observed Al–Qudhai'een walk directly to the cockpit and try to get into the cockpit.

After plaintiff used the bathroom at the rear of the plane, flight attendant De Campo searched the bathroom. He also searched under the seat originally assigned to Mr. Al–Shalawi, but did not find anything. Plaintiffs also note that no other passengers on Flight 90 had their seats searched, nor were the bathrooms searched after other passengers used them.

Although plaintiff claims to have returned to his seat after using the bathroom, flight attendant De Campo states that Al–Qudhai'een approached him after returning from the bathroom and asked a series of questions related to the flight. De Campo recalls that plaintiff asked, how long would the plane be on the ground in Columbus and whether they would be on the same plane going to Washington, D.C. After some discussion between the flight attendants regarding plaintiffs' behavior, they decided to inform Captain Patterson that plaintiff had asked similar questions about the flight to two different flight attendants, plaintiff disobeyed the flight attendant's order to remain in his seat, and plaintiff attempted to get into the cockpit. Flight attendant De Campo also mentioned to Captain Patterson that plaintiffs were Arab and plaintiffs believe that defendants relied on this information to justify the allegation that plaintiffs were hijackers.

Captain Patterson was concerned with the report by the flight attendants and believed that the circumstances posed a security threat to the flight. Therefore, he notified America West's Dispatch and relayed his concerns. Captain Patterson provided plaintiffs' names and seating information and suggested that when they arrived they should be met by security to determine their intent and examine their luggage. When the plane arrived in Columbus, Captain Patterson was instructed by airport security to taxi at a remote parking area away from the terminal. When the plane stopped, airport security boarded the plane, handcuffed plaintiffs and escorted them off the plane and then interrogated them for four hours, while the rest of the passengers were able to continue on to their destinations. After being questioned by the FBI, plaintiffs were advised that they were not under arrest and were free to leave. America West apologized to plaintiffs and upgraded them to first class for their flight to Washington, D.C.

Plaintiffs assert that defendants allegedly relayed false information based on racial stereotypes and this led to the unlawful harassment and detention of the plaintiffs. Based on these actions, plaintiffs filed their complaint alleging defendants violated their civil rights. Defendants believe they are entitled to summary judgment on all of plaintiffs' claims because they have broad discretionary authority under the Federal Aviation Act ("FAA") to request investigatory assistance from law enforcement authorities and/or remove any passenger the pilot determines may be inimical to safety.

## II. SUMMARY JUDGMENT

The standard governing summary judgment is set forth in Fed.R.Civ.P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).[3] The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479–80. That is, the nonmoving party has an affirmative

---

**3.** *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed.R.Civ.P. 50 rather than a pretrial summary judgment under Fed.R.Civ.P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097. In contrast, in ruling on a summary

judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir.2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir.2001).

### III. DISCUSSION

Plaintiffs assert that defendants, America West Airlines, Inc., and America West employees Captain Robert Patterson, First Officer Ron Moore, Robert De Campo, Carol Asada, and Leslie Franklin, violated their civil rights under 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), and 49 U.S.C.A. § 40127. Plaintiffs also assert state law claims of false arrest/imprisonment, defamation and privacy invasion (portrayal in false light), intentional infliction of emotional distress, negligence, breach of contract and trespass to chattels. Defendants argue that the FAA gives pilots broad discretionary authority to request investigatory assistance from law enforcement authorities and/or remove any passenger the pilot decides is or may be inimical to safety. In the alternative, defendants argue that summary judgment is appropriate because each of plaintiffs' claims fails to state a cause of action and/or fails because plaintiffs have insufficient evidence to substantiate those claims.

### A. Immunity under 49 U.S.C. § 44902(b)

Defendants contend that Captain Patterson had authority to refuse transportation to plaintiffs and also the authority to remove or have law enforcement remove plaintiffs pursuant to 49 U.S.C. § 44902(b) and they are therefore immune from all of plaintiffs' claims against them. The Federal Aviation Act, 49 U.S.C. § 44902(b), states that an air carrier "may refuse to transport a passenger or property the carrier decides is or might be inimical to safety." "Such a refusal cannot give rise to a claim for damages under either federal or [state] law unless the carrier's decision was arbitrary and capricious." *Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2d Cir.1975); *Schaeffer v. Cavallero*, 54 F.Supp.2d 350, 351 (S.D.N.Y. 1999).

Plaintiffs correctly assert that airline personnel are given broad, but not absolute, discretion to remove passengers for safety reasons. *Williams*, 509 F.2d at 948, sets forth the following test to analyze whether an airline's action of removing passengers was proper:

> The test of whether or not the airline properly exercised its power under [§ 44902] to refuse passage to an applicant or ticket-holder rests upon the facts and circumstances of the case as known to the airline at the time it formed its opinion and made its decision and whether or not the opinion and decision were rational and reasonable and not capricious and arbitrary in the light of those facts and circumstances.

*Williams*, and other cases applying § 44902, confirm that the statute protects any decision that is not arbitrary and capricious. *See e.g., Schaeffer*, 54 F.Supp.2d at 351 (Refusal to transport cannot give rise to liability unless arbitrary and capricious.); *Norman v. TWA*, 2000 WL 1480367, at *2 (S.D.N.Y. Oct.6, 2000)(same).

Plaintiffs argue that defendants should not be entitled to immunity because their actions were arbitrary and capricious. Plaintiffs, in comparing their behavior to cases in which immunity under § 44902 was found, assert that they did not assault or threaten to assault a passenger or crewmember; they were not hostile or disruptive but were in fact described as being "calm" when arrested; plaintiffs did not make any remarks that could be interpreted as threatening a hijacking or making a

bomb-threat; nor did plaintiffs possess weapons. Plaintiffs believe that the only allegation of any attempted breach of security is defendant Asada's claim that plaintiff Al–Qudhai'een touched the cockpit door, which he contests.

■ Defendants, however, dispute plaintiffs' argument that they did nothing unusual or out of the ordinary on Flight 90. Defendants assert that plaintiffs' own testimony and undisputed evidence demonstrates that: 1) plaintiffs disobeyed defendant DeCampo's instructions and changed seats without permission; 2) plaintiff Al–Qudhai'een entered the first class area and proceeded to walk toward the cockpit without obtaining permission; 3) plaintiff Al–Qudhai'een appeared to be "anxious" when he asked defendant Asada questions regarding the flight and became "irritated" and "uneasy" when informed that it would be stopping in Columbus, Ohio; and 4) defendant DeCampo considered plaintiff Al–Qudhai'een's questions about whether the plane they were currently on would also be the one that would travel on to Washington, D.C. to be uncommon for a passenger. In addition, while plaintiff Al–Qudhai'een appears to deny it now, he did admit to the FBI that he "might have inadvertently touched the door to the flight deck."[4] Plaintiffs behavior was reported to Captain Patterson, who made the decision to notify America West and have plaintiffs' bags subjected to a canine sniff search based on the facts known to him at that time.

■ The Court must make an "objective assessment" of the carrier's decision, which involved "taking into account all the circumstances surrounding the decision, including the (perhaps limited) facts known at the time; the time constraints under which the decision is made; and, not least, the general security climate in which the events unfold." *Dasrath v. Continental Airlines, Inc.*, 228 F.Supp.2d 531, 539 (D.N.J.2002). Additionally, the Court in *Williams* noted that one of the factors contributing to the decision not to transport plaintiff was "the danger of hijacking in light of those recently experienced [in 1969] by TWA and other airlines." 509 F.2d at 945. In this case, plaintiffs even acknowledge that this incident took place "within weeks of the Egypt Air crash."

Plaintiffs additionally appear to argue that Captain Patterson should have conducted some investigation prior to radioing for assistance when they state "Without attempting to verify Mr. De Campo's allegations by speaking with plaintiffs or other passengers, Captain Patterson radioed America West and said he needed to have plaintiffs' bags 'sniffed' for explosives upon arriving in Columbus." Pls' Mem. Opp'n Defs' Mot. for Summ. J. at 6. A captain of an airplane, however, is "entitled without further inquiry to rely upon a flight attendant's representations that a conflict with a passenger might distract the flight attendant from performing his or her safety-related duties." *Christel v. AMR Corp.*, 222 F.Supp.2d 335, 340 (E.D.N.Y.2002). In *Christel*, as the plane approached the runway for takeoff, the flight attendant called the cockpit and told the captain there was a disruptive passenger who interfered with her duties and refused to comply with her instructions. Upon re-

---

4. The factual conflict between the parties regarding whether plaintiff Al–Qudhai'een touched the door to the cockpit is not material and the Court does not rely on this dispute in reaching its conclusion. The Court is only required to assess what was known to Captain Patterson at the time he made the decision to call America West officials, not to look beyond the flight attendants' representations. *See Christel v. AMR Corp.*, 222 F.Supp.2d 335, 340 (E.D.N.Y.2002)

ceiving this information, the Captain acted within his discretion and decided to remove Christel from the plane. The Court concluded that "even if the battle of the egos escalated between [flight attendant] making exaggerated or even false representations to the Captain, the Captain did not have an obligation to leave the cockpit and investigate the truthfulness of [flight attendant's] statements." *Id.* at 340.

Taking into account all the circumstances known to Captain Patterson at the time he made the decision to radio America West for assistance and the fact that he is entitled to rely on the information provided to him by his crew despite any exaggerations or false representations, the Court finds as a matter of law that Captain Patterson's decision to remove plaintiffs from the airplane and to request a search of their baggage was not arbitrary or capricious. Defendants are therefore entitled to immunity under 49 U.S.C. § 44902(b), and are entitled to summary judgment on all of plaintiffs' federal claims against them.

### B. State law claims

The Court has granted defendants' motion for summary judgment on plaintiffs' federal claims. The Court therefore declines to exercise supplemental jurisdiction over plaintiffs' state law claims. It is well settled that a District Court may decline to exercise supplemental jurisdiction over statelaw claims once it has dismissed all claims over which it possessed original jurisdiction. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir.1997). Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state claims generally should be dismissed. *Id.; Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992). Therefore, pursuant to 28 U.S.C. § 1367(c)(3) and (d),

the Court will dismiss plaintiffs' state law claims against defendants without prejudice.

### IV. DISPOSITION

Based on the foregoing, the Court **GRANTS** defendants' summary judgment motion.

The Clerk shall enter final judgment in favor of defendants, and against plaintiffs, dismissing all plaintiffs' federal claims with prejudice and dismissing plaintiffs' state claims without prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Doc. 95 from the Court's pending motions list.

**IT IS SO ORDERED.**