Joseph F. SMITH, Plaintiff-Appellee,

v.

PIEDMONT AVIATION, INC., and Delta Air Lines, Inc., Defendants-Appellants.

No. 76–2482.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1978.

Rehearing Denied Feb. 27, 1978.

L. W. Anderson, Dallas, Tex., for defendants-appellants.

Joseph F. Smith, pro se.

Gary S. Kessler, Dallas, Tex., for plaintiff-appellee.

Before COLEMAN, HILL, and RUBIN, Circuit Judges.

COLEMAN, Circuit Judge.

The District Court, sitting without a jury, awarded the appellee, Joseph F. Smith, compensatory damages in the amount of

$1,051.80 and punitive damages in the sum of $1,500 for Piedmont's failure to comply with § 404(b) of the Federal Aviation Act of 1958, 49 U.S.C., § 1374(b).[1] We affirm as to compensatory damages and reverse the award of punitive damages.

In early April 1974, Joseph Smith, appellee, through Delta Air Lines in Dallas, made a reservation for April 26, 1974, on Piedmont Flight 944 from Atlanta, Georgia, to Bluefield, West Virginia. He was to be a groomsman in the wedding of a close friend in Tazewell, Virginia. His plans included the wedding rehearsal scheduled for 4:00 o'clock and the rehearsal dinner the same evening, April 26. Twice prior to April 26th Smith reconfirmed his reservation on Flight 944. On the appointed day Smith arrived at the boarding gate for his flight two hours ahead of scheduled departure. When the flight was called for boarding, he did not immediately join the boarding line. Because he erroneously believed that his confirmed reservation guaranteed him a seat on Flight 944, he saw no point in standing in a long line. Instead, he waited until the boarding line shortened before taking his place. When he reached the counter he was informed that all available seats were filled and he could not board the airplane. Seven other reserved ticket holders were also denied boarding on Flight 944.

There were two reasons for Piedmont's inability to board those eight ticket holders. First, the plane was overweight because extra fuel had to be loaded in anticipation of bad weather. Thus three seats had to be left empty to counterbalance the weight of the added fuel. Second, Flight 944 had been overbooked by five, that is, the number of reservations accepted for the flight exceeded the total number of seats by five.

After Mr. Smith was denied boarding, he requested that Piedmont remove his luggage from the plane since it contained his funds. This request was refused. He next requested that Piedmont arrange a charter flight to take him to Bluefield. He was informed that this was impossible. Piedmont did offer Smith alternate air travel to Bluefield, which he initially turned down because the offered flights were all booked to capacity and he would have to fly standby. After Smith twice renewed his demand for a charter flight, the Piedmont agent said, "I don't know when you're going to get it through your thick head we're not going to rent any airplanes or charter you a flight", a statement which the District Court considered rude and insulting.

Mr. Smith finally selected an alternative flight from Atlanta to Roanoke, Virginia, intending to secure his own ground transportation from Roanoke to Tazewell. In addition to providing this flight free of charge, Piedmont tendered Smith two checks. One, in the amount of twenty dollars, was a refund of the Roanoke to Bluefield fare. The other, for $43.18, was compensation for denied boarding. Appellee did not cash these checks since that would have released Piedmont. After arriving in Roanoke, Smith rented a car and drove to Tazewell over mountain roads with which he was not familiar. He missed all of the wedding rehearsal but made it to a portion of the rehearsal dinner. Although he missed the rehearsal, Smith performed flawlessly as groomsman.

Smith first filed suit in the Dallas County Court at Law. Prior to initiating any discovery however, he non-suited that action and filed in the District Court. Evidence was presented that, in denying boarding to the eight ticket holders, Piedmont failed to follow its boarding priority rules filed with the Civil Aeronautics Board in 1967 and incorporated into the Company's traffic manual. These rules provided that in the event of an oversale situation passengers in the same class were to be boarded according

---

1. 49 U.S.C. § 1374(b) provides:

No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

to the time and date of the booking of their reservation. In non-compliance with these rules, Piedmont's agent boarded Flight 944 on a first come–first serve basis. The boarding agent testified that his instructions were to consider the convenience of the passengers, insure that all passengers on board were confirmed, and, most importantly, get the flight out on time. A time-consuming records check to insure compliance with the boarding priority rules would have delayed the flight several hours.

Piedmont argues that the finding of a violation of § 1374(b) and the award of damages is unsupported by the evidence. Piedmont's failure to follow its own boarding priority rules filed with the Board, destroys this argument, *Nader v. Allegheny Airlines, Inc.*, 1975, 167 U.S.App.D.C. 350, 361, 512 F.2d 527, 538, *rev. on other grounds*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976).

On the subject of compensatory damages, Smith was admittedly due $63.18 for fare refund and as compensation for denied boarding. This means that he was awarded approximately a thousand dollars for inconvenience, inability to reach the rehearsal on time, missing part of the rehearsal dinner, being required to drive an automobile in mountainous territory,[2] and the cost of automobile rent. All of this occurred in a relatively short space of time and, in essence, was about what any air traveler encounters when his plan schedules go awry. In our opinion, the compensatory award was generous. However it did not exceed the perimeters binding the discretion of the trier of the fact. In the circumstances here encountered damage awards may not be overturned on appeal unless they shock the judicial conscience, see, *e. g.*, *Greyhound Corp. v. Jones*, 10 Cir. 1964, 327 F.2d 904.

We find, however, inadequate support in the record for the award of punitive damages.

[M]ere inadvertence or even gross negligence will not suffice to support an award of punitive damages. The tort must be "aggravated by evil motive, actual malice, deliberate violence or oppression".

*Nader v. Allegheny Airlines, Inc., supra,* 167 U.S.App.D.C. at 372, 512 F.2d at 549, quoting *Black v. Sheraton Corp. of America,* 47 F.R.D. 263, 271 (D.D.C.1969). Piedmont did fail to follow its boarding priority rules. In response to Smith's repeated, and unreasonable, requests that Piedmont charter a flight for the mere purpose of getting him to the wedding rehearsal of another not his own, the Piedmont agent did refer to his "thick head", a reaction obviously provoked by Smith's repeated requests for a charter flight. While such a reference might support an award for nominal damages, which Smith has adequately recovered on the compensatory side of the case, we are unable to distill evil motive, actual malice, deliberate violence, or oppression from this episode. The Judgment for punitive damages must be reversed.

As to compensatory damages, AFFIRMED.

As to punitive damages, REVERSED.

Each party to bear his (or its) costs on appeal.

---

2. The record indicates that it was about a hundred miles from Roanoke to Tazewell.