Victor CORDERO, Plaintiff,

v.

CIA. MEXICANA DE AVIACION, S.A., a corporation, also known as Mexicana Airlines, Defendant.

No. CV 79–04423 RES.

United States District Court, C. D. Cal.

April 13, 1981.

Henry Seligsohn, King & Seligsohn, Los Angeles, Cal., for plaintiff.

Michael J. Holland, Condon & Forsyth, New York City, for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

The plaintiff booked passage on defendant's direct flight No. 905 on May 27, 1979, from Los Angeles to Mexico City. After departure the flight was diverted to Mazatlan to pick up people who had been stranded there, and the through passengers were required to disembark and go through Mexican immigration. Plaintiff was not permitted to reboard and brings this action for actual and punitive damages. The issues were submitted to the jury, which decided them in favor of the plaintiff and awarded damages as follows:

| | |
|---|---|
| General damages (apart from baggage) | $ 1,000.00 |
| Punitive damages | 35,000.00 |
| Loss of or damage to baggage | 1,000.00 |

Motions for a directed verdict were made at the close of plaintiff's case and at the close of all of the evidence, both of which were denied. The court now grants judgment notwithstanding the verdict as to general and punitive damages.

Flight 905 was late out of Los Angeles. In flight, irritation at the delay was expressed by the passengers. Alcoholic drinks were served to the passengers, including plaintiff, who had also imbibed at the lounge in Los Angeles while awaiting the flight. When it was announced that Flight 905 would be diverted to Mazatlan, the irritation increased, and one passenger, identified as "Garcia," became extremely vocal and called the pilot a vulgar name. The situation appeared to the stewardess to be serious enough to require the presence of the pilot, who came out of the cockpit to talk to the unruly passenger. Later the stewardess announced that the passengers would be required to disembark. Again there was a commotion among the passengers. The passengers did disembark.[1] There was loud talk and pounding of the counter in the immigration waiting room. Plaintiff was a leader in securing some 25 signatures to a complaint to be addressed to the airlines. The decision to exclude plaintiff was made without regard to these events, but they do indicate something with regard to the passenger irritation. The plaintiff testified that he believed that Garcia was the real culprit and that the pilot had made a mistake in identity.

■ 49 U.S.C. § 1374(b) forbids an air carrier from making unjust discriminations, and a carrier may be liable to a party who has been the victim of an unjust discrimination. Such discrimination has been found where a denial of passage was based on race,[2] or where the carrier has failed to follow its own rules for boarding passengers in cases of oversale.[3] Under 49 U.S.C. § 1511(a), an air carrier may refuse transportation to a person "when, in the opinion of the carrier, such transportation would or might be inimical to safety of flight." A carrier which properly refuses transportation under this section does not discriminate in violation of 49 U.S.C. § 1374(b).[4] The words "in the opinion of the carrier" were not qualified by Congress, and the question now arises whether the court should qualify the section so that only reasonable or rational opinions justify the right to exclude. If so, then a finder of fact must in the afterlight determine what was reasonable or rational. I think we should not reach this result. I think that airline safety is too

---

1. The stewardess and the pilot testified that, as the plaintiff passed the stewardess at the exit of the plane during disembarkation, the plaintiff made an obscene statement and a gesture to the stewardess. The plaintiff denied this, and the jury by its verdict must have accepted the plaintiff's version. The alleged incident is not considered in reaching the court's conclusion.

2. *Fitzgerald v. Pan American World Airways, Inc.*, 229 F.2d 499 (2d Cir. 1956).

3. *Smith v. Piedmont Aviation, Inc.*, 567 F.2d 290 (5th Cir. 1978).

4. *Williams v. Trans World Airlines*, 509 F.2d 942 (2d Cir. 1975).

important to permit a safety judgment made by the carrier (in this case the pilot) to be second-guessed months later in the calm of a courtroom by a judge or a jury, having no responsibility for the physical safety of anyone, on the basis of words which are inadequate to convey the degree of excitement and tenseness existing at the time the judgment was made.

Certainly an air carrier may not use flight safety as an excuse to discriminate among passengers, and where the safety issue is a mere sham used to hide some other purpose, the finder of fact should be permitted to find a discrimination. But where, as here, there is no suggestion of any ill will to plaintiff on the part of the airline or its employees, and no suggestion that the action taken was because of age, sex, race, or creed of the plaintiff, and where, as here, there was a real, live incident of concern to the pilot, there is no basis for holding that the safety issue was sham. There may have been an overreaction coupled with mistaken identity. In my opinion, that is not discrimination warranting relief under 49 U.S.C. § 1374(b).

What has been said is, of course, applicable to the problem of punitive damages; but even if plaintiff is entitled to compensatory damages, there is simply nothing in the record which directly or indirectly would justify a finding of evil motive, malice, deliberate violence, or oppression. *See Smith v. Piedmont Aviation, Inc.,* 567 F.2d 290 (5th Cir. 1978).

The clerk is directed to enter judgment in favor of the plaintiff in the amount of $1,000.00.