**Lisa RUTA, Plaintiff,**

v.

**DELTA AIRLINES, INC., Defendant.**

**No. 02 CIV.4707 CM GAY.**

United States District Court,
S.D. New York.

June 2, 2004.

**394**

Frank P. Allegretti, Rye, NY, for Plaintiff.

Brian P. Sexton, Quirk and Bakalor, P.C., New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER·

McMAHON, District Judge.

Plaintiff Lisa Ruta brings this diversity action seeking compensatory and punitive damages from Defendant Delta Airlines, Inc. (hereinafter "Delta") for her removal from a Delta flight. Plaintiff claims (1) breach of contract, (2) wrongful ejectment, (3) negligence, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, (6) violation of the Americans with Disabilities Act ("ADA"), and (7) defamation.

Defendant moves to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6), or in the alternative moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, Defendant's motion is **GRANTED** in part and **DENIED** in part.

### FACTS

Many of the facts in this case are in dispute—although few of the material facts have been disputed with competent evidence. However, first I will set out Defendant's version of events, and then Plaintiff's version of events.

The background is simple: Sometime prior to June 23, 2001, Plaintiff purchased an airline ticket to fly on a Delta flight from Newark, NJ to Fort Myers, FL. [Defendant's 56.1 Statement ¶ 1]. On June 23, 2001, at approximately 1:00 p.m., Plaintiff arrived at Newark International Airport (hereinafter "Newark") with her travel companions—her husband Robert Rossi, her brother Vincent Ruta, and Vincent's girlfriend Melissa Maggiola. [Plaintiff's 56.1 Statement ¶ 8]. The flight was delayed for several hours due to weather conditions. [Defendant's 56.1 Statement ¶ 3]. Soon after Plaintiff boarded the plane, she was removed from the flight. Plaintiff traveled to Florida on a flight the next day at no additional cost. [*Id.* at ¶ 23].

*What Happened: Defendant's Version*

During the flight delay, Plaintiff was perceived by passengers and Delta employees to be yelling loudly and generally behaving in a rude, disruptive, and inconsiderate manner. [Defendant's 56.1 Statement at ¶ 8]. She cut in front of other passengers who were waiting at the boarding gate information counter and interrupted Gate Agent Radley Osorio, who was assisting another passenger. [*Id.* at ¶ 5]. Osorio claims Plaintiff yelled at him and used "foul and shocking" language during their encounter. [*Id.* at ¶ 7]. In addition, Plaintiff was observed drinking alcoholic beverages in the airport bar prior to boarding the plane. [*Id.* at ¶ 4].

Once Plaintiff got on the plane, passengers and flight attendants heard her shouting "free booze!" They also claim she was being disruptive, out of control, and appeared intoxicated. [*Id.* at ¶¶ 9–13]. Osorio and passengers stated that Plaintiff smelled of alcohol. [*Id.* at ¶ 15]. Osorio further claims that Plaintiff kicked his leg as he walked down the aisle, "lifting his skin" and "leaving a red mark". [*Id.* at ¶ 14; Deposition of Radley Osorio, at p. 94:7–16 ]. Flight Attendant Joy Wilson testified that Osorio told her that "[Plaintiff] kicked me" and that "she needs to be

taken off [the plane] because ... you're not allowed to physically hurt somebody that works for the airline." [Deposition of Joy Wilson, at p. 31:24–32:4]. Other passengers confirm they saw or heard that Plaintiff kicked Osorio. [Def.'s 56.1 Statement at ¶ 17]. Defendant claims Plaintiff's behavior caused other passengers to feel uncomfortable and become concerned for their safety. [*Id.* at ¶ 18].

Lead Flight Attendant Jennifer Miles and Osorio reported to Captain Robert J. Coffey in the cockpit that Plaintiff was disruptive during boarding, was shouting "free booze!," that she kicked or attempted to kick a Delta employee, that her behavior was making other passengers uneasy, and that flight attendants felt uncomfortable taking off with her on the plane. [*Id.* at ¶ 19]. Captain Coffey then decided to remove Plaintiff from the flight, advised operations of his decision, and requested the presence of airport security. [*Id.* at ¶ 21]. Plaintiff was then removed from the flight.

*What Happened: Plaintiff's Version*

Plaintiff sustained complete loss of hearing in her right ear in 1975, at the age of 15, as a result of a gunshot wound during an attempted assault and attempted rape. [Plaintiff's 56.1 Statement ¶ 1]. Subsequent to Plaintiff's injury to her ear, she underwent surgery wherein the surgeon took half of a live nerve in her tongue to graft into a severed nerve in her face. As a result, her tongue is partially paralyzed and she speaks with a slur. [Plaintiff's 56.1 Statement ¶ 3]. Furthermore, the volume of her speech is louder than that of persons who are not hearing impaired. [*Id.*].

Plaintiff's physician has prescribed daily dosages of blood pressure, anti-depressant, and pain killer medications. Drinking while on these medications is contraindicated. [*Id.* at ¶ 5]. As a general rule,

Plaintiff does not drink alcohol. [*Id.* at ¶ 74].

On the day of the flight, Plaintiff and her travel companions were waiting at the gate from which the flight was scheduled to depart. At approximately 2:00 p.m., Delta employees made an announcement on the public address system, which Plaintiff was unable to hear due to her hearing loss. [*Id.* at ¶ 10]. She waited in line to speak with Gate Agent Osorio to inquire as to what was said in the announcement. [*Id.*] Osorio gave a very rude unprofessional response to Plaintiff, something to the effect of, "Who the hell do you think you are?" [*Id.* at ¶ 11]. Rossi (Plaintiff's husband) witnessed this encounter and informed Osorio of Plaintiff's hearing impairment and said there was no reason to talk to her in that manner. [*Id.*] Passenger Christopher Bioty also witnessed Osorio's behavior towards Plaintiff and claims it was uncalled for. [*Id.* at ¶ 12]. Another female Gate Agent witnessed Osorio's conduct, apologized to Plaintiff and her travel companions, and gave Maggiola four meal vouchers. [*Id.* at ¶ 16].

Rossi and Maggiola went to get some food while Plaintiff and her brother remained at the gate. [*Id.*]. While Rossi and Maggiola waited for their food, they went to a bar area near the restaurant and Rossi drank a Bloody Mary. [*Id.* at ¶ 17]. They then returned to the gate with the food order, which included a soda for Plaintiff. [*Id.*] Plaintiff claims she had taken all of her prescription medications within 24 hours of the flight and did not consume any alcoholic beverages that day. [*Id.* at ¶ 18]. Plaintiff had no other contact with Osorio prior to boarding the plane and taking her seat. [*Id.* at ¶¶ 19–20].

While boarding the plane, Plaintiff handed her boarding pass to a female Gate Agent and said something like "Thank you,

at least someone is acting professionally." [*Id.* at ¶ 22]. This comment was relayed to or overheard by Osorio. [*Id.*] When Plaintiff had boarded the plane but had not yet taken her seat, she heard another passenger say something like, "For all of those hours we were delayed we should have free drinks." [*Id.* at ¶ 23]. Plaintiff laughingly and "unwittingly" loudly replied, "Yes, we should." [*Id.*] This exchange was confirmed by Passenger Bioty, who was seated in the row directly in front of Plaintiff. [*Id.* at ¶ 24]. Several passengers claim that Plaintiff was not disruptive or uncooperative and did not appear to be a threat to anyone's safety. [*Id.* at ¶¶ 25–27].

Osorio boarded the plane and spoke with Flight Attendant Miles. [*Id.* at ¶ 30]. Miles asked if he had had any problems in the gate area, to which he replied in the affirmative. [*Id.*] Miles then told Osorio that Flight Attendant Wilson was uncomfortable with Plaintiff because she was loud. [*Id.*] Osorio said, "She's coming off." [*Id.*] He then approached Plaintiff, told her that she was "intoxicated," and ordered her off the plane. [*Id.* at ¶¶ 27–28].

As Osorio was making his way towards Plaintiff, he stumbled before he had even reached her row. [*Id.* at ¶ 35]. One passenger confirms that Plaintiff did not hit or kick any Delta personnel. [*Id.* at ¶ 28]. Plaintiff laughed out loud at this incident. [*Id.* at ¶ 35].

Miles' incident report states that Osorio ordered Plaintiff off the plane, but does not mention that Osorio consulted Captain Coffey. [*Id.* at ¶ 31].

Rossi repeatedly demanded that Delta and the Port Authority police give Plaintiff a breathalyzer or some other sobriety test, which Delta refused to do. [*Id.* at ¶ 39].

Plaintiff left the plane after having been told by airport security that her failure to do so would result in her arrest. [*Id.* at ¶¶ 46–47].

Immediately after the incident, Plaintiff's blood pressure skyrocketed and she began to bleed through her nostrils and ear for a few hours. [*Id.* at ¶ 47]. Within a week of returning from Florida, Plaintiff saw her physician, who had to double her blood pressure medication dosage. [*Id.* at ¶ 49].

## DISCUSSION

Defendant moves to dismiss all claims, or in the alternative, for summary judgment on the grounds that the decision to remove Plaintiff from the aircraft was not arbitrary and capricious, and therefore Plaintiff cannot recover for any of the claims alleged in her complaint.

### I. *Relevant Legal Standards*

A party is entitled to summary judgment when there is no "genuine issue as to any material fact" and the undisputed facts warrant judgment for the party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only factual disputes that might affect the outcome of the suit will preclude summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate if the opposing party fails to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to defeat a motion for summary judgment, the opposing party cannot rely on mere allegations

or denials in its pleading, but must present affirmative evidence showing that there is a genuine issue for trial. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505.

## II. *Preemption under the Federal Aviation Act (FAA)*

■ Defendant contends that all of Plaintiff's claims are preempted by the Federal Aviation Act of 1958 (the "FAA"). The FAA permits "an air carrier ... [to] refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902(b). As a result, "[A] refusal [to transport] cannot give rise to a claim for damages under either federal or New York State law unless that carrier's decision was arbitrary and capricious." *Schaeffer v. Cavallero,* 54 F.Supp.2d 350, 351 (S.D.N.Y. 1999) ("*Schaeffer I* "); *see also Williams v. Trans World Airlines,* 509 F.2d 942, 948 (2d Cir.1975); *Adamsons v. American Airlines, Inc.,* 58 N.Y.2d 42, 48, 457 N.Y.S.2d 771, 775, 444 N.E.2d 21 (1982). A court's analysis of the arbitrary and capricious standard must be based upon "the facts and circumstances as known by the decision-maker at the time he formed his opinion and whether or not the opinion and decision were arbitrary or capricious in light of those facts and circumstances." *Norman v. Trans World Airlines, Inc.,* No. 98 Civ. 7419(BSJ), 2000 WL 1480367, at *3 (S.D.N.Y. Oct.6, 2000); *Williams,* 509 F.2d at 948. The facts are not to be tested by any additional information unknown to the decision-maker when the decision was made, but later learned. *Williams,* 509 F.2d at 948.

■ An airline's discretion to reject a passenger must be accepted if exercised in good faith and for a rational reason. *Adamsons,* 58 N.Y.2d at 47, 457 N.Y.S.2d at 774, 444 N.E.2d 21. This deference to the airline's judgment is understandable in light of the fact that the airline must often make such decisions on the spur of the moment, shortly before the plane takes off, and therefore without the benefit of complete and accurate information. *Id.* In fact, "[t]here are times when legitimate safety reasons require that the decision be based entirely on a prospective passenger's appearance and behavior." *Id.*

■ In the present case, the evidence as to who made the decision is undisputed: Captain Coffey made the decision to remove Plaintiff from the plane on the basis of information he received from Flight Attendant Miles. Captain Coffey testified that a

> Flight Attendant came up to the cockpit and advised me that there were three individuals in the back of the aircraft who were being very disruptive, abusive, one of them shouting free booze, free booze, free booze. There was also what she said was an attempted physical contact between these individuals and a flight attendant. Passengers in the back of the aircraft were feeling uneasy with these individuals being back there and they voiced their concerns to the flight attendant, which she relayed to me.

[Coffey Dep.; Plaintiff's 56.1 Statement ¶ 34]. Plaintiff offers no competent evidence disputing Captain Coffey's version of events.

■ Plaintiff argues Captain Coffey did not know any of the specifics of Plaintiff's alleged behavior, and that therefore his decision was arbitrary and capricious. However, the law is clear that a "captain of an airplane is entitled without further inquiry to rely upon a flight attendant's representations that a ... passenger might distract the flight attendant from performing his or her safety-related duties." *Christel v. AMR Corp.,* 222 F.Supp.2d 335,

340 (E.D.N.Y.2002); *Norman*, 2000 WL 1480367, at *3. Furthermore, even if the flight attendant makes exaggerated or false representations to the captain, the captain is under no obligation to leave the cockpit to investigate the truthfulness of those representations. *Christel*, 222 F.Supp.2d at 340. The sincerity of the flight attendant's representations has no bearing on whether the captain's decision was arbitrary and capricious. *Norman*, 2000 WL 1480367, at *3.

Plaintiff also contends there is a factual dispute as to whether Captain Coffey was the one who made the decision to remove Plaintiff, which precludes summary judgment. However, there is no such dispute, because Plaintiff offers no evidence that Captain Coffey did not make the final decision to remove Plaintiff from the plane.

Plaintiff argues that Lead Flight Attendant Miles' incident report does not mention that Captain Coffey was the one who decided to remove Plaintiff from the flight. [Plaintiff's Opposition at 3]. But the fact that Captain Coffey was not mentioned in the report does not mean that he was not the person who made the decision.

Plaintiff also argues that there is evidence that Gate Agent Osorio was the one who decided to remove Plaintiff. *Id.* But there is no such evidence. While Miles and Osorio's testimony reveals that Osorio believed that Plaintiff should be removed, there is no evidence showing that Osorio removed plaintiff before Captain Coffey made the final decision that she should be taken off the flight. Osorio himself testified that he felt that Plaintiff should be removed from the plane, and thereafter went to Captain Coffey to express his concerns about Plaintiff. [Osorio Dep. at 103]. Then, Osorio claims, "[Captain Coffey] just looked at me and said, well, she can go. And I said to him, I'm glad you agree, I'm taking her off the plane. And

he said, go ahead, do everything you need to do." *Id.* The captain confirmed Osorio's concerns with Flight Attendant Miles, then ordered that Plaintiff should be removed. Only after that was she taken off the plane. Plaintiff presents absolutely no evidence to the contrary.

Since the undisputed record demonstrates that Captain Coffey made the decision to remove Plaintiff from the plane, based on reports made to him about her behavior by other airline employees, his decision was not arbitrary and capricious as a matter of law.

The more interesting question is what preemptive consequence flows from that determination. Plaintiff pleads one federal and six state law claims that ostensibly entitle her to relief. Defendant argues that all these claims (except, perhaps, for Plaintiff's claim for defamation) are preempted as a result of either the FAA or a 1978 amendment to the FAA, the Airline Deregulation Act (hereinafter "1978 Act"), which provides that no State shall enforce a law, regulation, or other provision if it has the "force and effect of law relating to rates, routes, or services of any air carrier[.]" 49 U.S.C. § 41713(b).

### A. *Breach of Contract*

With regard to her claim for breach of contract, Defendant is indisputably correct that Plaintiff's claim must be dismissed. In 1995, the Supreme Court ruled definitively that the 1978 Act confines plaintiffs claiming breach of contract to the terms of the parties' bargain, "with no enlargement or enhancement based on state laws or policies external to the agreement." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232–33, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). Thus, we look to the terms of the contract of carriage to ascertain what rights, if any, Plaintiff has as a matter of contract law.

Here, Plaintiff's claim for breach of contract must be dismissed because Plaintiff did not suffer any damages within the terms of her contract. The tariff provisions applicable to Plaintiff's claims—which, together with the passenger ticket, "exclusively and conclusively govern the rights and liabilities" between a passenger and her airline, *see* 14 C.F.R. § 253.4; *see also Fondo v. Delta Airlines, Inc.,* No. 00 Civ. 2445(JSM), 2001 WL 604039, *3 (S.D.N.Y. May 31, 2001), *aff'd in an unpublished opinion,* 25 Fed. Appx. 82, 2002 WL 126349 (2d Cir. January 31, 2002) (incorporating two relevant rules: Rule 35 (Refusal to Transport) and Rule 260 (Involuntary Refund)).

Under Rule 35, Delta "is not liable for its refusal to transport any passenger or for its removal of any passenger in accordance with the preceding paragraphs of this rule, but [Delta] will, at the request of any passenger, refund in accordance with Rule 260." Rule 260 provides that Delta will refund "the unused portion of the passenger's ticket" and further provides that "no refund will apply when alternate transportation is provided by Delta and accepted by the passenger." Since it is undisputed that Plaintiff used her ticket on a Delta flight the next day, there is no unused portion of the ticket, and Plaintiff is not entitled to any refund, which is the limit of Delta's contractual liability for removing her from the flight. By virtue of the 1978 Act, as explicated in *American Airlines,* no principle of state contract law can be relied on to alter that result. Therefore, the breach of contract claim must be dismissed.

### B. *Tort Claims*

The various state law tort claims pose a different issue. While recognizing that the Second Circuit has not yet spoken to this issue (at least not since passage of the 1978 Act), Defendant argues that all of Plaintiff's state law tort claims are preempted either by the original FAA or by the 1978 Act.

The United States Supreme Court has at least intimated that tort claims arising out of the decisions and actions of Delta employees that pertain to access to flights are preempted by the 1978 Act. *American Airlines v. Wolens,* 513 U.S. at 232–33, 115 S.Ct. 817 (passenger claims based on an air carrier's decision and actions with regard to "access to flights" relate to "service" within the meaning of the 1978 Act's preemption provision). Several Circuit Courts of Appeal have held that "negligence" and other tort claims based on "access to flights," and/or decision or actions taken by air carriers in connection therewith, are preempted by the 1978 Act. *Smith v. Comair, Inc.,* 134 F.3d 254, 259 (4th Cir.1998) (false imprisonment and IIED claims relating to boarding practices preempted); *Travel All Over the World, Inc., v. Kingdom of Saudi Arabia,* 73 F.3d 1423 (7th Cir.1996) (tortious interference, IIED, and fraud claims preempted to the extent they were based on airline's refusal to transport passengers who had booked their flights through agency); *Chukwu v. Board of Directors British Airways,* 889 F.Supp. 12, 13–14 (D.Mass.1995), *aff'd mem.,* 101 F.3d 106, 1996 WL 662466 (1st Cir.1996), *cert. denied,* 520 U.S. 1188, 117 S.Ct. 1473, 137 L.Ed.2d 685 (1997) (slander and IIED claims preempted). And in a decision that predates the 1978 Act, our own Court of Appeals has held that a passenger's claim of false imprisonment, based on a carrier's decision to refuse transportation and its actions in connection therewith, was not cognizable, since the decision and actions of the carrier were both authorized and contemplated by the tariff provision that was part of the contract of carriage implementing the carrier's statutory authority in safety-related

matters. *Williams v. Trans World Airlines*, 509 F.2d 942, 946–7 (2d Cir.1975).

█ District courts in this Circuit have reached conflicting determinations about whether various state tort claims against air carriers are preempted by federal aviation law. *Compare e.g., Schaeffer v. Cavallero*, 29 F.Supp.2d 184, 186 (S.D.N.Y. 1998) ("*Schaeffer II* ") ("the construction of § 44902, itself a matter of federal law, is necessarily a substantial issue in any case involving state law claims regarding a passenger's removal from an airplane") and *Galbut v. American Airlines*, 27 F.Supp.2d 146 (E.D.N.Y.1997) (slander per se, false arrest, false imprisonment, intentional and negligent infliction of emotional distress and negligence claims arising out of airline's requirement that passenger pay for upgrade and its purportedly false allegations that passenger had stolen upgrade stickers preempted by 1978 Act) with *Trinidad v. American Airlines*, 932 F.Supp. 521 (S.D.N.Y.1996) (personal injury action based on negligence of pilot and other airline personnel not preempted by 1978 Act or FAA) and *Peterson v. Continental Airlines, Inc.*, 970 F.Supp. 246 (S.D.N.Y.1997) (negligence, assault and battery, false arrest, false imprisonment and defamation claims arising from seating conflict not preempted by 1978 Act). In so doing, however, they generally apply the case-by-case tripartite preemption test outlined by Judge Sotomayer in *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214 (S.D.N.Y.1994). Under this test, the Court must first determine whether "the activity at issue in the claim is an airline service." *Id.* If it is a service, then the Court must decide whether the claim affects the airline service "directly or tenuously, remotely or peripherally." *Id.* at 222. Finally, the Court must decide whether "the underlying tortious conduct was reasonably necessary to the provision of the service." *Id.* "[I]f the tortious act did not occur during the service ... or ... did not further the provision of the service in a reasonable manner, then the state tort claim should continue." *Id.*

In *Rombom*, a passenger aboard a United Air Lines flight was removed from the plane after she allegedly "misbehaved" while the flight attendant was giving flight safety instructions and was subsequently arrested by the Chicago Police Department. She sued the airline, claiming that the flight attendant was rude, and that the airline employee's actions caused her "great mental and physical distress, of a temporary and permanent nature, was humiliated, made sick and injured her character and reputation." *Rombom*, 867 F.Supp. at 217. Applying the tripartite test, the court found that claims stemming from the flight crew's rude and unprofessional conduct and claims based on the pilot's refusal to transport her were preempted by the 1978 Act. Noting that the decision whether to transport a given passenger in order to protect other passengers constitutes a "service," the court reasoned that "the decision to have a passenger arrested may be a service if it is the only way to remove a passenger who refuses to disembark." *Id.* at 224. To the extent plaintiff Rombom's claims stemmed from her arrest, which was subsequent to her departure from the plane, and therefore only tenuously related to the pilot's "service" of protecting other passengers— i.e. "where the essence of the claim is that the air carrier abused its authority to provide a given service"—the court found that her claims were not preempted.

█ Using the *Rombom* test, I find that all of Plaintiff's state tort claims, except her defamation claim, are preempted. First, the Captain's decision to refuse to transport Plaintiff constitutes a "service" under the 1978 Act. *Rombom*, 867 F.Supp.

at 223. Second, the alleged emotional and physical harm suffered by Plaintiff was a direct result of the Captain's decision to have Plaintiff removed from the plane. Finally, there was nothing unreasonable about the method by which the Captain effected Plaintiff's removal from the airplane. She was not arrested, unlike the plaintiff in *Rombom.* If, as discussed above, the Captain's decision to have Plaintiff removed was not arbitrary and capricious, then it cannot have been arbitrary and capricious to call on law enforcement to enforce the Captain's decision. There is no claim here for assault, battery, false arrest or false imprisonment; and there is no evidence in the record suggesting that Plaintiff was bodily removed from the plane—though even if there were, I would likely find preemption in view of the carrier's need to get Ruta off the plane somehow once Captain Coffey decided she could not remain on the flight. Accordingly, because Plaintiff's claims for negligence, negligent and intentional infliction of emotional distress and wrongful ejectment ultimately stem from Captain Coffey's decision to remove Plaintiff from the airplane, they are preempted.

■ The only tort claims that do not appear to arise from Plaintiff's removal are claims stemming from Osorio's "rude" comments to Plaintiff at the boarding gate and Osorio's allegedly slanderous comments made in front of other passengers (to the extent the allegedly slanderous comments were made to the pilot and the flight crew, they relate to the Captain's decision to remove Plaintiff, and are there-fore preempted). Applying *Rombom,* I conclude that any of Plaintiff's state tort claims that are based on Osorio's "rudeness" are preempted, but her slander claim is not. While any claim based on Osorio's unprofessional conduct may directly implicate an airline service, such conduct "cannot be categorized as outrageous or unreasonable," and the claim is therefore preempted. *Rombom,* 867 F.Supp. at 223. On the other hand, Osorio's allegedly slanderous comments about Plaintiff in front of other passengers, taken in a light most favorable to Plaintiff, could be found to have been made out of spite, and not "reasonably necessary" to protecting the safety of the other passengers. *See Id.* at 224 ("Because the flight crew's decision to have [plaintiff] arrested was allegedly motivated by spite or some unlawful purpose, [plaintiff's] subsequent tort claims arising out of this decision are at best tenuously related to an airline service."). Accordingly, Plaintiff's slander claim is not preempted by the 1978 Act.[1]

## III. *ADA Claim*

■ Plaintiff's claim for violation of the Americans with Disabilities Act is not preempted by the 1978 Act (which speaks only to State law preemption), but is barred by the terms of the ADA itself. 42 U.S.C. § 12181(10) specifically provides that the provision allegedly violated by Defendant—42 U.S.C. § 12184—does not apply to or encompass travel by aircraft. Title II of the ADA simply does not cover air travel, and Plaintiff's claim under that section for refusal to carry is, accordingly,

---

1. I note that two recent cases in this district, *Shupert v. Continental Airlines, Inc.,* No. 00 Civ. 2743(LMM), 2004 WL 784859 (S.D.N.Y. April 12, 2004) and *Curtin v. Port Authority of New York,* 183 F.Supp.2d 664 (S.D.N.Y.2002), have found that negligence claims related to airline safety are impliedly preempted by the FAA. Because I have found that most of Plain-tiff's state tort claims are expressly preempted by the ADA, I need not consider whether they are barred by implied FAA preemption. Plaintiff's defamation claim, however, as discussed *supra,* bears no relationship to issues of airline safety, and therefore most certainly is not preempted by the FAA.

not actionable. *Puckett v. Northwest Airlines, Inc.*, 131 F.Supp.2d 379, 382 (E.D.N.Y.2001); *see also Love v. Delta Air Lines*, 179 F.Supp.2d 1313, 1316 (M.D.Ala. 2001), *rev'd on other grounds*, 310 F.3d 1347 (11th Cir.2002).

Plaintiff seeks to avoid this result by attempting to recharacterize her claim as a claim for denial of carriage based on an "impairment" in violation of the Air Carrier Access Act (the "ACAA"), which prohibits air carriers from discriminating against disabled individuals. 49 U.S.C. § 41705. But the deadline for filing an amended pleading in this action passed on February 10, 2003. Plaintiff did not amend her pleading and to this day has not moved for permission to file an amended pleading—not even in opposing the instant motion.

■ In any event, I am persuaded by the Eleventh Circuit's decision in *Love v. Delta Air Lines* that there is no private right of action under the ACAA—at least since the United States Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

In *Sandoval*, a driver's license applicant in Alabama brought a class action under Title VI challenging the Alabama Department of Public Safety's (the "Department") official policy of administering its driver's license examination only in the English language as violative of federal regulations promulgated pursuant to federal law, and forbidding federal funding recipients from using methods that have the effect of discriminating on the basis of national origin. The Department countered that Title VI did not provide respondents a cause of action to enforce the regulation. The Court announced a four step inquiry to determine whether the federal statute contained a private right of action: (1) look to the statutory text for " 'rights-creating' language." *Sandoval*,

532 U.S. at 288, 121 S.Ct. 1511; (2) analyze the statutory structure within which the provision in question is embedded, *id.* at 290, 121 S.Ct. 1511; (3) if—and only if—statutory text and structure have not conclusively resolved whether a private right of action should be implied, examine the legislative history and context within which a statute was passed, *id.* at 288, 121 S.Ct. 1511; and (4) if—and only if—none of the other methods are conclusive, look to the language of the regulation, where the a "statute has provided a general authorization for private enforcement of regulations," *id.* at 291, 121 S.Ct. 1511. The Court stated that, "Regulations that go beyond what the statute itself requires" cannot be enforced though a private right of action. Reversing the decisions of the district court and the court of appeals, the Court found that Congress did not intend to create a "freestanding private right of action to enforce" disparate-impact regulations promulgated under Title VI. *Sandoval*, 532 U.S. at 286–287, 293, 121 S.Ct. 1511.

In *Love v. Delta Air Lines*, a wheelchair-bound airline passenger sued Delta Airlines for failure to adequately service her "special needs" in violation of the ACAA even though she had notified the airline of the nature of her disability when making her flight reservation. The Eleventh Circuit, after a lengthy and thorough review of the text and structure of the ACAA under the *Sandoval* test, found that "Congress did not intend to create a private right of action in a federal district court to vindicate the ACAA's prohibition against disability-based discrimination on the part of air carriers." *Love*, 310 F.3d at 1359; *see also Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263 (10th Cir.2004) (same).

I see no reason to take issue either with the Tenth or Eleventh Circuit's analysis. The statute itself contains no "rights-creat-

ing" language, and the structure of ACAA, which provides for a number of different enforcement mechanisms, strongly supports that conclusion.[2] Indeed, the regulations that implement the ACAA expressly provide that a passenger claiming she was refused transportation on the basis of her disability has two remedies: (1) make a complaint to the air carrier pursuant to its ACAA complaint resolution mechanism or (2) file a formal complaint with the Department of Transportation. 14 C.F.R. §§ 382.31 and 382.65; *see also Love*, 310 F.3d at 1355–56. Any attempt by Plaintiff to recharacterize her claim as being within the purview of ACAA thus fails.

## IV. *Slander*

I cannot dismiss Plaintiff's claim for defamation on this record.

First, as discussed above, *see* Point II, *supra*, I doubt that the defamation claim is preempted by the 1978 Act. In addition, I find that Plaintiff successfully states a cause of action for slander per se under

New York law (applicable by stipulation of the parties).

 Under New York law, to state a prima facie case of slander, a plaintiff must show: (1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) "of and concerning" the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing special harm or constituting slander per se; and (7) not protected by privilege. *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir.2001). Importantly, slander is not actionable unless it constitutes slander per se, or unless the Plaintiff suffers special damages. *Liberman v. Gelstein*, 80 N.Y.2d 429, 434, 590 N.Y.S.2d 857, 860, 605 N.E.2d 344 (1992). The four traditional categories of slander per se consist of statements that charge a plaintiff with a serious crime; that tend to injure a plaintiff in his or her trade, business or profession; that allege that plaintiff has a loathsome disease; or that impute unchastity to a woman. *Id.* at 435, 590 N.Y.S.2d 857, 605 N.E.2d 344.

---

**2.** 49 U.S.C. § 41705 provides:

(a) In general.—In providing air transportation, an air carrier, including (subject to section 40105(b)) any foreign air carrier, may not discriminate against an otherwise qualified individual on the following grounds:

(1) the individual has a physical or mental impairment that substantially limits one or more major life activities.

(2) the individual has a record of such an impairment.

(3) the individual is regarded as having such an impairment.

(b) Each act constitutes separate offense.—For purposes of section 46301(a)(3)(E); a separate violation occurs under this section for each individual act of discrimination prohibited by subsection (a).

(c) Investigation of complaints.—

(1) In general.—The Secretary shall investigate each complaint of a violation of subsection (a).

(2) Publication of data.—The Secretary shall publish disability-related complaint data in a manner comparable to other consumer complaint data.

(3) Review and report.—The Secretary shall regularly review all complaints received by air carriers alleging discrimination on the basis of disability and shall report annually to Congress on the results of such review.

(4) Technical assistance.—Not later than 180 days after the date of the enactment of this subsection, the Secretary shall—

(A) implement a plan, in consultation with the Department of Justice, the United States Architectural and Transportation Barriers Compliance Board, and the National Council on Disability, to provide technical assistance to air carriers and individuals with disabilities in understanding the rights and responsibilities set forth in this section; and

(B) ensure the availability and provision of appropriate technical assistance manuals to individuals and entities with rights or responsibilities under this section.

In her complaint, Plaintiff alleges that Osorio's statement in front of other passengers that Plaintiff was "intoxicated" was false and defamatory. [Complaint, ¶¶ 43–44]. New York courts, however, have long held that referring to someone as "intoxicated" or "drunk" is not slander per se. *See e.g., Torres v. Huner*, 150 A.D. 798, 799, 135 N.Y.S. 332, 333 (2d Dep't. 1912) (statement "You are drunk" is not slander per se); *Moran v. Singer*, 75 N.Y.S.2d 874 (Sup.Ct.1947) (statement "You are a drunken sot and a disgrace and the mother of a lot of tramps. You spend all your time getting drunk. You are the same as your daughter, no good." is not slander per se). Nor does Plaintiff allege special damages arising from this comment. Summary judgment for Defendant on these grounds is appropriate.

However, Plaintiff now argues for the first time, in her Memorandum in Opposition to Defendant's Motion for Summary Judgment, that her defamation claim actually stems from Osorio's statement, made in front of other passengers, that Plaintiff kicked him as he walked down the aisle of the airplane. Defendant contends that Plaintiff cannot alter the "operative fact" of "intoxication" that predicates the defamation claim in her complaint, because the one-year statute of limitations for defamation clams has run, and because amendments that set forth new operative facts do not "relate back" to the original complaint.[3] Defendant is incorrect.

"Although federal courts must apply state law in a diversity case to determine whether an action is barred by the statute of limitations, most courts have held that the federal rule as to the relation back of amendments applies in a diversity case because it is a matter of procedure." *Jewell v. Capital Cities/ABC, Inc.*, No. 97 Civ. 5617 LAP, 1998 WL 702286, at *1 (S.D.N.Y. Oct.7, 1998). Under Rule 15(c)(2) of the Federal Rules of Civil Procedure, allegations in an amended complaint relate back to the date of the original filing when the amended claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c)(2). "The main inquiry under this Rule is whether adequate notice of matters asserted in the amended pleading have been timely given to the opposing party by the general facts alleged in the original pleading." *In re American Express Co. Securities Litigation*, No. 02 Civ. 5533(WHP), 2004 WL 632750, at *7 (S.D.N.Y. March 31, 2004) (citing *Stevelman v. Alias Research, Inc.*, 174 F.3d 79 (2d Cir.1999)). "However, an amended pleading does not relate back if it introduces a different set of operative facts." *In re American Express Co. Securities Litigation*, 2004 WL 632750, at *7 (citing *Bank Brussels Lambert v. The Chase Manhattan Bank, N.A.*, No. 93 Civ. 5298(LMM), 1999 WL 672302, at *2 (S.D.N.Y. Aug.27, 1999) (allegations relate back only "if the [new] allegations amplify the facts alleged in the original pleading or set forth those facts with greater specificity")).

Here, despite the fact that Ruta did not plead the "kicking" remark in her original complaint, those words clearly arise from the same transaction and same core set of operative facts as Osorio's "intoxication" statement. *Contemporary Mission, Inc. v. New York Times Co.*, 665 F.Supp. 248, 256 (S.D.N.Y.1987) (finding

---

**3.** Under New York law the statute of limitations on defamation claims is one year. N.Y. C.P.L.R. § 215(3) (McKinney 2002); *see also Gold v. Berkin*, No. 00 Civ. 7940, 2001 WL 121940, at *3 (S.D.N.Y.Feb.13, 2001). The one year period accrues from the date that the defamatory statement is published or uttered. *Id.*

that plaintiff's first and second amended complaints share a "common core of operative facts," even though "10 additional statements [from the same news article] in the second amended complaint which are alleged to be libelous do not always involve the same sets of facts as do the three (and then four) matters originally alleged to be libelous"). The facts alleged in Plaintiff's original complaint provided sufficient notice to Defendant that any defamatory statements made by Osorio arising from his interaction with Plaintiff on the airplane would be subject to litigation, and therefore relate back to the original complaint.

■ Moreover, Plaintiff's proposed amendment to her complaint adequately alleges defamation. In New York, a statement that falsely charges a person who with "an indictable offense upon conviction of which punishment may be inflicted" can be considered slanderous per se. *Privitera v. Town of Phelps,* 79 A.D.2d 1, 3, 435 N.Y.S.2d 402, 404 (4th Dept.1981). Plaintiff cites to *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 62 (2d Cir.1993) in support of her contention that Osorio's "she kicked me" statement constitutes an accusation of an assault (or, more likely, an attempted assault, given New York's "physical injury" rule for criminal assaults), which is slanderous per se under New York law. In *Weldy,* plaintiff airline employee became involved in an incident with another employee, who had been having an extramarital affair with his wife. Despite the fact that he did not have first hand knowledge of the nature of the incident and that others who did have first hand knowledge of it told him that plaintiff neither verbally nor physically threatened the other employee, plaintiff's supervisor published to a third party that he was discharging plaintiff on the grounds that he committed "aggravated assault" against

another employee at the airline terminal. Noting that "assault is a serious, indictable crime under both [New York] state and federal law," the Second Circuit found that "[the supervisor's] charge of 'aggravated assault' provided a sufficient basis for holding Piedmont liable under a slander *per se* cause of action." *Id.*

■ In the instant matter, Osorio has alleged that Plaintiff kicked and injured him. The question of whether Plaintiff did indeed kick Orsorio is a matter of some dispute. Some passengers claim to have witnessed the "kick," while others claim that there was no physical contact between Plaintiff and Osorio. Nevertheless, under New York law, Plaintiff's purported actions, if true, could constitute an indictable offense—a person is guilty of assault (in the third degree) when "with intent to cause physical injury to another person, he causes such injury to such person or to a third person," McKinney's Penal Law § 120.00—and, thus are a sufficient grounds for alleging slander per se. *Compare Burdick v. Verizon Communications, Inc.,* 305 A.D.2d 1030, 1031, 758 N.Y.S.2d 877, 877 (4th Dep't 2003) (statements that plaintiff "hit" or "took a swing at" a third party while plaintiff was engaged in a labor protest were not slanderous per se because there was no allegation that the person "hit" was injured). And they certainly would meet the lower threshold for "attempted assault," which is also an indictable offense. *Matter of Kristie II,* 676 N.Y.S.2d 249, 250, 252 A.D.2d 807, 808 (3d Dep't.1998) ("The absence of proof of an actual physical injury does not preclude a finding that respondent attempted to inflict such injury"). Plaintiff is entitled to present that claim a jury.

I therefore grant Plaintiff leave to amend her complaint *only* to assert additional facts supporting her defamation claim.

## CONCLUSION

For the reasons stated above, I conclude that Plaintiff's claims for negligence, negligent and intentional infliction of emotional distress and wrongful ejectment are preempted by the 1978 Act. Defendant's motion for summary judgment is therefore **GRANTED**, except as to Plaintiff's claim for defamation, as to which it is **DENIED**. Plaintiff has 10 days from the date of this order to file an amended complaint.

This constitutes the decision and order of the Court.